RECOMMENDED FOR FULL-TEXT PUBLICATION
Pursuant to Sixth Circuit Rule 206
ELECTRONIC CITATION: 2001 FED App. 0297P (6th Cir.)
File Name: 01a0297p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

_____

CONNIE D. GRAY,
       *Plaintiff-Appellee,*

   *v.*

TOSHIBA AMERICA
CONSUMER PRODUCTS, INC.,
       *Defendant-Appellant.*

No. 99-6460

Appeal from the United States District Court
for the Middle District of Tennessee at Nashville.
Nos. 94-00712; 95-00616—Robert L. Echols,
Chief District Judge.

Argued: March 9, 2001

Decided and Filed: August 30, 2001

Before: KRUPANSKY, BOGGS, and BATCHELDER,
Circuit Judges.

_____

## COUNSEL

**ARGUED:** Karen L.C. Ellis, BASS, BERRY & SIMS, Nashville, Tennessee, for Appellant. Michael Ray Jennings, Lebanon, Tennessee, for Appellee. **ON BRIEF:** Karen L.C. Ellis, J. Davidson French, BASS, BERRY & SIMS,

Nashville, Tennessee, for Appellant.  Michael Ray Jennings, Lebanon, Tennessee, for Appellee.

_____

**OPINION**

_____

ALICE M. BATCHELDER, Circuit Judge.    Toshiba America Consumer Products, Inc., appeals the district court's denial of its motion for judgment as a matter of law or, in the alternative, for a new trial, following a jury verdict awarding the plaintiff back pay and compensatory and punitive damages on her claim that Toshiba had terminated her employment in violation of 42 U.S.C. § 2000e-5. Because we hold that the plaintiff failed to adduce evidence sufficient to support the verdict, we reverse and remand with instructions to enter judgment for Toshiba.

**I.  Procedural Background**

Plaintiff Connie Gray filed a complaint against Toshiba America Consumer Products, Inc. ("Toshiba") on August 23, 1994, alleging that Toshiba discriminated against her based on her gender when it terminated her employment. Gray alleged (1) sex discrimination in violation of 42 U.S.C. 2000e-5 ("Title VII"), (2) violation of 42 U.S.C. §§ 1981a and 1983, and a Tennessee civil rights statute, and (3) a claim under state common law for alleged breach of the duty of good faith and fair dealing.  Gray also filed a complaint against the International Brotherhood of Electrical Workers, Local No. 429, alleging breach of fair representation, which was consolidated with her claims against Toshiba.

Toshiba filed a motion for summary judgment that the district court granted in part, dismissing Plaintiff's § 1983 claim and the state claims against Toshiba.  The remaining claims were tried to a jury in January of 1999.  At the close of the plaintiff's evidence, Toshiba moved for judgment as a matter of law pursuant to Federal Rule of Civil Procedure 50,

claiming that the plaintiff had failed to present sufficient evidence from which a jury could find that the non-discriminatory reason promulgated by Toshiba was a pretext for discrimination. The court denied the motion. Toshiba renewed the motion at the conclusion of the trial, and it was again denied.

The jury returned a verdict against Toshiba on the Title VII and § 1981a claims and awarded Gray $60,000.00 in back pay, $5,000.00 for emotional pain and suffering, and $30,000.00 in punitive damages. The jury also found that Local 429 breached its duty of fair representation in handling Gray's grievance, and awarded Gray $10,000.00 in back pay against the union.

Toshiba filed post-trial motions reiterating the Rule 50 motion in regard to pretext, and claiming that there was not sufficient evidence to support the award of punitive damages. In the alternative, Toshiba sought a new trial, claiming that the district court had erred in several respects during the course of the trial. These motions were denied. Toshiba filed a timely appeal on these issues. The Union has not appealed.

## II.  Factual Background

Plaintiff-Appellee Connie Gray was employed in Toshiba's Lebanon, Tennessee, plant from 1986 until June 11, 1993. Early in June of 1993, Gray and a Toshiba employee named Tammy Lynch became embroiled in an argument involving another employee, Pam Chapman, and the company's policy on appropriate attire in the workplace. The conflict between Gray and Lynch escalated when Chapman volunteered to Gray that Lynch had been calling Gray a bitch. According to Chapman, Gray stated that she would confront Lynch, and if the allegations were true, she would hit her. Chapman advised Gray to let the matter lie.

The next day, another employee told Gray that Lynch had called her a bitch. Gray informed her assistant supervisor, Jackie Harris, about Lynch's derogatory statements, and asked

what would happen to her if she hit Lynch. Ms. Harris advised against that course of action, and suggested that Gray simply ignore Lynch. Gray sought a second opinion from Joe Collins, the Plant Manager. Collins also advised against attacking Lynch, and warned Gray that she could be fired for such an act.

By mid-morning, however, Gray had decided to confront Lynch regarding her alleged comments. Gray told fellow employee Audrey Duke that Lynch would not get away with calling her a bitch. According to Duke, Gray then removed her hair-clip and earrings, and put her hair in a ponytail and left her work station. On her way to see Lynch, Gray passed Joyce Mitchell, Personnel Manager at Toshiba. Gray recounted the statements allegedly made by Lynch, and again, asked what would happen if she hit Lynch in retaliation. Mitchell repeated the company line in regard to hitting fellow employees, warning Gray that she could be fired if she hit Lynch. Gray told Mitchell that she was just going to talk to Lynch to determine if she had in fact called her a bitch.

During the mid-morning break, Gray approached Lynch, and asked if she had called her a derogatory name, and if so, if Lynch wanted to repeat it to her face. According to Gray, when Lynch accepted the invitation, Gray punched Lynch in the face, breaking her glasses and giving her a black eye. Thus vindicated, Gray returned to her work station and said to Chapman, "I told you I would hit that bitch if she admitted it." According to supervisor Harris, when asked whether she hit Lynch, Gray admitted to the assault saying, "Yes, I knocked the crap out of her." Gray was dismissed for the remainder of the day.

The following day, Gray met with Leonard Tyree, Vice-President of General Affairs, Ms. Mitchell from personnel, and Margaret Maynard, a union steward, to discuss the incident. According to Mitchell, although the plaintiff was sorry the incident had happened at Toshiba, she was not sorry she hit Lynch. Mitchell recommended that Gray be

## V.

For the foregoing reasons, we REVERSE the judgment of the district court and REMAND the case with instructions that it enter JUDGMENT FOR TOSHIBA.

*Id.* Our holding is bolstered by the Supreme Court's conclusion in *Reeves* that "a plaintiff's prima facie case, combined with sufficient evidence to find that the employer's asserted justification is false, may permit the trier of fact to conclude that the employer unlawfully discriminated." *Reeves,* 530 U.S. at 148.

Gray has not provided any evidence to support a claim that Toshiba's proffered reason for her discharge was not the company's actual motivation for discharging her. The evidence presented in this case did not even support a prima facie showing of gender discrimination, and Gray points to nothing beyond that evidence to support a claim that Toshiba really discharged her because of her gender and not because she deliberately provoked a fight with another employee.

Although we are always hesitant to overturn a jury verdict, we hold that the district court erred as a matter of law in denying Toshiba's Rule 50 motion. The evidence in this record is simply insufficient to permit the jury, even if it chose to disbelieve Toshiba's articulated reason for discharging Gray, to conclude that the true reason for Gray's discharge was discriminatory. To allow an employee who has committed an intentional, premeditated assault on another employee to avoid dismissal on the evidence presented here is to shift the burden of proof from the employee to the employer. Accordingly, we reverse the judgment of the district court.

## IV.

Because we hold that the evidence is wholly insufficient to support Gray's claim of discrimination, the issue of punitive damages is moot, as are the defendant's claims relating to the motion for a new trial.

terminated because the assault was premeditated and two managers had warned her that she could be fired for hitting a co-worker. Tyree discharged Gray pursuant to Rule B-1 of the Plant Rules, which prohibits "fighting on company property where the employee is determined to be the instigator or aggressor." Rule B-1 provides that Toshiba may discharge or suspend the employee for a violation.

Gray based her gender discrimination claim on the fact that three years prior to her melee with Lynch, two workplace altercations involving male employees had occurred at the Toshiba plant. In both those instances, management elected to suspend rather than discharge the participants.

### III. Analysis

An appeals court reviews a denial of a Rule 50(b) motion *de novo*, applying the same test as the district court must apply. *K & T Enters., Inc. v. Zurich Ins. Co.*, 97 F.3d 171, 174-75 (6th Cir. 1996). The motion may be granted only if in viewing the evidence in the light most favorable to the non-moving party, there is no genuine issue of material fact for the jury, and reasonable minds could come to but one conclusion, in favor of the moving party. *Id.* at 175-76.

We note at the outset that, although Gray produced evidence to support a finding that (1) she was a member of a protected class, (2) she suffered an adverse employment action, and (3) she was qualified for the position lost, she failed to produce evidence that a similarly situated person outside of the protected class received more favorable treatment, the fourth element necessary to establish a prima facie case of gender discrimination. *See Manzer v. Diamond Shamrock Chem. Co.*, 29 F.3d 1078, 1081 (6th Cir. 1994) (citing *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 801 (1973)). The male employees Gray claims received more favorable treatment, in this case more lenient discipline, were not similarly situated to her. This circuit has held that

the plaintiff must show that the "comparables" are substantially similar *in all respects*. . . .   Thus to be deemed "similarly situated," the individuals with whom the plaintiff seeks to compare his/her treatment must have dealt with the same supervisor, have been subject to the same standards, and engaged in the same conduct without such differentiating or mitigating circumstances that would distinguish their conduct or the employer's treatment of them for it.

*Mitchell v. Toledo Hosp.*, 964 F.2d 577, 583 (6th Cir. 1992) (emphasis in original) (internal citation omitted).

However, this circuit has held that following a trial on the merits in a Title VII action, "a reviewing court should not focus on the elements of the prima facie case but should assess the ultimate question of discrimination." *Kovacevich v. Kent State Univ.*, 224 F.3d 806, 821 (6th Cir. 2000) (citing *EEOC v. Avery Dennison Corp.*, 104 F.3d 858, 862 (6th Cir. 1997)).   For that reason, we cannot simply hold that the plaintiff's failure to provide evidence of an essential element of her prima facie case is dispositive here.  Rather, we must look to the ultimate question—whether the plaintiff has proven that her discharge was intentionally discriminatory.

This does not mean, however, that plaintiff's failure to present evidence sufficient to make out a prima facie case is not relevant to our review of that ultimate question.  In employment discrimination cases, if the plaintiff presents sufficient evidence to make out a prima facie case, the burden shifts to the employer to produce evidence of a legitimate, non-discriminatory reason for the action taken; this burden is one of production only, not of persuasion.  *Texas Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248, 253 (1981).  If the employer does so, the burden returns to the plaintiff to prove that the employer's stated reason is pretextual.  *Id.* at 255.  In *St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 511 (1993) (first italics added), the Supreme Court, after reviewing the *Burdine* framework, discussed the factfinder's task once the

a fight.  Following those altercations, and prior to Gray's fight with Lynch, Toshiba instituted a stricter policy that permitted the company to terminate an employee if that employee was found to be the instigator of the fight.  Gray responds that the sections of the rules were merely re-numbered, and no significant change in policy occurred.  Even if this were the case, the rules as they were written at the time of the Gray-Lynch incident permitted the employer to fire an employee who instigated a fight.  There is no dispute that, although verbally provoked by Lynch, Gray threw the first, and only punch.  This kind of offensive conduct appears to be exactly the type of activity the Toshiba rules were designed to deter.

Gray presented no evidence whatsoever that any other employee of Toshiba ever instigated a fight as Gray did and received less severe punishment.  Neither is there any evidence that Gray was disciplined contrary to the established rules of Toshiba, and, indeed, the evidence demonstrates that Gray and other employees whom she consulted about her plan to hit Lynch were well aware that instigating a fight was grounds for termination.  In the absence of evidence that the proffered reason had no basis in fact or that it was not sufficient to warrant dismissal, there is no evidence from which the jury could base a suspicion of mendacity on the part of Toshiba, and no evidence from which the jury could infer intentional discrimination.

That leaves only the second *Manzer* option—that the employer's articulated reason did not actually motivate the discharge.  As to that type of rebuttal, we held,

[i]f the bare bones elements of plaintiff's prima facie case were sufficient to make this showing, . . . the entire 'burden shifting' analysis of *McDonnell Douglas* and its successors would be illusory . . .  Accordingly, we hold that, in order to make this type of rebuttal showing, the plaintiff may not rely simply upon his prima facie evidence, but must, instead, introduce additional evidence of [gender] discrimination.

indicates that the prior incidents involving male employees erupted spontaneously. In one of the prior incidents, one employee hit another in the knee with a hammer as an act of workplace horseplay. The employee who had been struck did not see the humor and grabbed his co-worker by the shirt. After other workers intervened, the two ceased hostilities and shook hands. Both employees were suspended without pay for three days on account of the incident. The other incident involving two male employees also occurred spontaneously, with no clear aggressor. Some witnesses claim that actual punches were thrown, while other witnesses dispute this account.

Gray, on the other hand, announced her intentions to several co-workers. She asked management-level employees if she would be subject to discipline for hitting Lynch. According to one co-worker, she removed her earrings and put her hair back in anticipation of a brawl. This intentional and premeditated conduct is more severe, and justifying of harsher discipline than the conduct of the male Toshiba combatants.

Second, the record demonstrates that several management level employees had put Gray on notice that she could be terminated for attacking a co-worker. Although the male employees were on constructive notice through the company rules—and common sense—that fighting on company premises was forbidden, they had not received the specific warnings that Gray had. Moreover, the warnings Gray received came only hours, and finally moments, before she punched Lynch.

Third, we note that Gray and the male employees are not similarly situated in regard to the company rules in place at the time of the respective incidents, or the rule under which each was disciplined. The men involved in altercations were suspended for violation of Rule C-16, which prohibits fighting and allows for dismissal, but does not differentiate an employee who is involved in a fight from one who instigates

defendant has articulated its non-discriminatory reason for the adverse employment action:

> The factfinder's disbelief of the reasons put forward by the defendant (particularly if disbelief is accompanied by a suspicion of mendacity) may, *together with the elements of the prima facie case*, suffice to show intentional discrimination. Thus, rejection of the defendant's proffered reasons will *permit* the trier of fact to infer the ultimate fact of intentional discrimination, and the Court of Appeals was correct when it noted that upon such rejection, "[n]o additional proof of discrimination is *required*." (emphasis added) But the Court of Appeals' holding that rejection of the defendant's proffered reasons *compels* judgment for the plaintiff disregards the fundamental principle of Rule 301 that a presumption does not shift the burden of proof, and ignores our repeated admonition that the Title VII plaintiff at all times bears the "ultimate burden of persuasion."

The Court went on to hold, "It is not enough, in other words, to *dis*believe the employer; the factfinder must *believe* the plaintiff's explanation of intentional discrimination." *Id.* at 519.

The Supreme Court has recently revisited the question of what is the plaintiff's evidentiary burden in an employment discrimination case. In *Reeves v. Sanderson Plumbing Products, Inc.*, 530 U.S. 133, 147 (2000) the Court, referring to its holding in *St. Mary's Honor Center* — that it is not enough to disbelieve the employer, rather the factfinder must believe the plaintiff's explanation of discrimination — said: "In reaching this conclusion, however, we reasoned that it is *permissible* for the trier of fact to infer the ultimate fact of discrimination from the falsity of the employer's explanation." The Court went on to explain that:

Proof that the defendant's explanation is unworthy of credence is simply one form of circumstantial evidence that is probative of intentional discrimination, and it may be quite persuasive. *See* [*St. Mary's Honor Ctr.*, 509 U.S.] at 517 ("[P]roving the employer's reason false becomes part of (and often considerably assists) the greater enterprise of proving that the real reason was intentional discrimination") . . . Thus, *a plaintiff's prima facie case, combined with sufficient evidence to find that the employer's asserted justification is false*, may permit the trier of fact to conclude that the employer unlawfully discriminated.

*Id.* at 147-48 (last italics added).

Finally, the *Reeves* Court explicitly held that in entertaining a Rule 50 motion for judgment as a matter of law, the district court is required to review all of the evidence in the record, drawing all reasonable inferences in favor of the nonmoving party, making no credibility determinations and weighing no evidence. *Id.* at 150. The reviewing court must use the same standard. *See generally id.* at 151.

This circuit, reviewing the *Burdine* requirements in light of *St. Mary's Honor Center*, has held that "[t]he jury may not reject an employer's explanation . . . unless there is a sufficient basis *in the evidence* for doing so." *Manzer,* 29 F.3d at 1083 (emphasis in original).

To make a submissible case on the credibility of his employer's explanation, the plaintiff is required to show by a preponderance of the evidence either (1) that the proffered reasons had no basis in fact, (2) that the proffered reasons did not actually motivate his discharge, or (3) that they were insufficient to motivate discharge.

*Id*. at 1084 (internal quotations and emphasis omitted.) The first type of rebuttal, we said, consists of evidence that the reasons given by the employer simply did not happen. *Id.* The third type, "ordinarily consists of evidence that other

employees, particularly employees not in the protected class, were not fired even though they engaged in substantially identical conduct to that which the employer contends motivated its discharge of the plaintiff." *Id.* The first and third types of rebuttals, we held, "are direct attacks on the credibility of the employer's proffered motivation for firing the plaintiff, and, if shown, provide an evidentiary basis for what the Supreme Court has termed a 'suspicion of mendacity.'" *Id.* It is thus clear, in light of *Reeves* and *St. Mary's Honor Center*, as well as our opinion in *Manzer*, that whether the plaintiff has in fact presented evidence supporting each element of her prima facie case is material to the determination of whether she has demonstrated that the employer's articulated reason for the discharge is not credible. *See Roh v. Lakeshore Estates, Inc.*, 241 F.3d 491, 497-99 (6th Cir. 2001).

Here, Toshiba articulated a non-discriminatory reason for firing Gray, namely, that she committed an intentional, premeditated assault on a fellow employee after being warned by several superiors not to do so. Gray, however, has produced no evidence casting doubt on the credibility of this articulated reason. First, there is no evidence in the record that Gray did not commit assault or that she was not warned not to commit it. Hence, there is no evidence that Toshiba's articulated reason has no basis in fact. Second, there is no evidence in the record that committing an intentional, premeditated assault on another employee, having been warned not to do so, is not sufficient to warrant discharge under Toshiba's rules. Gray claims that she presented this evidence—that is, evidence that similarly situated male employees were not disciplined as severely as she was—as the fourth prong of her prima facie case, but it is clear from the record that she did not.

The employees Gray seeks to cast as similarly situated differ from her in several important ways. First, the male employees' conduct was different. Most significantly, Gray's assault on Lynch was premeditated, whereas the record