Lawrence W. WELLER, Plaintiff,

v.

TITANIUM METALS CORP.,
et al., Defendants.

No. C2–02–290.

United States District Court,
S.D. Ohio,
Eastern Division.

March 21, 2005.

See also 806 N.E.2d 154.

---

Raymond J. Tisone, Warren, OH, for Plaintiff.

George Edward Yund, Frost Brown Todd LLC, Cincinnati, OH, for Defendant.

*OPINION AND ORDER*

SARGUS, District Judge.

Plaintiff Lawrence W. Weller (Weller), a former employee of Defendant Titanium Metals (Timet) in Toronto, Jefferson County, Ohio, originally brought this action in the Common Pleas Court of that county against Timet and three of its supervisory employees. Weller alleged that his employment was wrongfully terminated in June 2001 in violation of rights under Ohio statutory law (Counts I and II), public policy (Count III), and representations that induced him to leave his prior employment (Count IV). Comp., Doc. 1, Attch. The case was first removed to federal court on diversity grounds in October 2001 in Case No. C2–01–1007, but remanded by a different branch of the Court in that case on grounds that complete diversity was lacking.

The case was again removed to this Court in March 2002 on grounds that discovery had disclosed certain defendants were improperly joined and, consequently, there indeed *was* complete diversity of the parties justifying the removal. Notice of Removal, Doc. 1. Propriety of that removal has since been confirmed by Order of the Court, Sept. 30, 2002, adopting the Report and Recommendations of the Magistrate

Judge denying the further Motion to Remand based findings that Plaintiff has no colorable claim against Defendants Blosser and Pieron. Doc. 25. Plaintiff's claim under Count IV has since been withdrawn (Pltf's. Res. to MSJ, Doc. 32, pp. 1–2) so that the case remained before the Court on Counts I, II, and III of the Complaint, primarily against Defendants Timet and Kearns.[1]

In an Order of Certification (Doc. 36) and an Opinion and Order (Doc. 37), both filed February 28, 2003, this Court certified a question of state law to the Ohio Supreme Court under its Rule XVIII and ordered further consideration of Defendants' Motion for Summary Judgment (Doc. 26) held in abeyance pending a response from that court. When the Ohio Supreme Court accepted the question for review, this Court, for administrative purposes, ordered the summary judgment motion dismissed without prejudice, subject to reactivation upon notice that an answer to the question had been announced. Doc. 40, 9–15–03. Upon notice filed by Defendants' counsel (Doc. 41) that the Ohio Supreme Court had answered the question certified, this Court ordered the Defendants' Motion for Summary Judgment reactivated (Doc. 42), and the case is now before the Court for further consideration of that motion.

This Court's certified question in effect sought guidance from the Ohio Supreme Court whether indirect proof of age discrimination under Ohio law required that a plaintiff show he or she had been replaced by a person not in the age class protected by the law (as indicated by the syllabus in *Barker v. Scovill, Inc.*, 6 Ohio St.3d 146, 451 N.E.2d 807 (1983)) or whether it is sufficient merely to show that the replacement or retained person was "substantially younger," as established by the United States Supreme Court for federal age discrimination cases in *O'Connor v. Consolidated Coin Caterers Corporation*, 517 U.S. 308, 116 S.Ct. 1307, 134 L.Ed.2d 433 (1996). The Ohio Supreme Court's response (102 Ohio St.3d 8, 806 N.E.2d 154 (2004)) cites the syllabus of its newly-decided case, *Coryell v. Bank One Trust Co. N.A.*, 101 Ohio St.3d 175, 803 N.E.2d 781 (2004), which makes it clear that the latter is sufficient, i.e., such a discharged employee need only show that he or she was "replaced by, or the discharge permitted the retention of, a person of substantially younger age."[2] *Id.*, syllabus, ¶ 1. This answer thus precludes the possibility that prompted this Court's question—that Plaintiff's case here might be determined on summary judgment simply by the admitted fact that his replacements, although younger, were also members of the protected class, i.e., both 40 years of age or more.

In his notice of the Ohio Supreme Court's answer to the certified question, counsel for Defendants correctly points out that his motion for summary judgment, which is now again before the Court, "asserted other, independent bases" for their argument that the motion should be granted. Doc. 41, p. 3. The Court therefore will proceed to consideration of the remainder of Defendants' motion together with Plaintiff's response, Defendants' reply, and various depositions, affidavits, and other documentary materials now on file in the record.

---

1. Plaintiff's counsel in effect concedes the lack of a colorable case against Defendant Blosser, but does argue briefly against granting summary judgment in favor of Defendant Pieron. Pltf's. Res. to MSJ, Doc. 32, pp. 26–27.

2. The Ohio Supreme Court also notes that "[t]he term 'substantially younger' as applied to age discrimination in employment cases defies an absolute definition and is best determined after considering the particular circumstances of each case." *Id.*, syllabus, ¶ 2.

The procedure for considering whether summary judgment is appropriate is set forth in Federal Rule of Civil Procedure 56(c) as follows:

The judgment sought shall be rendered forthwith if the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.

In ruling on such a motion, the evidence must be viewed in the light most favorable to the nonmoving party. *Adickes v. Kress & Co.*, 398 U.S. 144, 158–59, 90 S.Ct. 1598, 26 L.Ed.2d 142 (1970). Summary judgment will not lie if the dispute about a material fact is genuine, "that is, if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). However, summary judgment *is* appropriate if the opposing party fails to make a showing sufficient to establish the existence of an element essential to that party's case and on which that party will bear the burden of proof at trial. See *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); see also *Matsushita Electronic Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986). Further, cases are not necessarily inappropriate for summary judgment merely because they are complex or involve state of mind issues. See *Street v. J.C. Bradford & Co.*, 886 F.2d 1472, 1479 (6th Cir.1989) (citing *Matsushita* and *Anderson, inter alia*).

In the *Street* opinion, the Sixth Circuit sets out a number of further principles now applicable to summary judgment practice, including the following. In responding to a summary judgment motion, the nonmoving party "cannot rely on the hope that the trier of fact will disbelieve the movant's denial of a disputed fact, but must 'present affirmative evidence in order to defeat a properly supported motion for summary judgment.' " *Ibid.* (quoting *Liberty Lobby*, 477 U.S. at 257, 106 S.Ct. 2505). In other words, the non-moving party "must adduce more than a mere scintilla of evidence in order to overcome the motion." *Ibid.* (citing *Liberty Lobby, inter alia*). Moreover, "[t]he trial court no longer has the duty to search the entire record to establish that it is bereft of a genuine issue of material fact." *Id.* at 1479–80 (citing *Frito–Lay, Inc. v. Willoughby*, 863 F.2d 1029 (D.C.Cir.1988)); see *Skotak v. Tenneco Resins, Inc.*, 953 F.2d 909, 915 n. 7 (5th Cir.1992). Thus, it must now appear that the non-moving party has an affirmative duty to direct the court's attention to those specific portions of the record upon which reliance is placed to show there is a genuine issue of material fact requiring a trial for its resolution. See *InterRoyal Corp. v. Sponseller*, 889 F.2d 108, 111 (6th Cir.1989).

In this diversity case, this Court applies the substantive law of the State of Ohio as interpreted by its highest court. See *Northland Ins. Co. v. Guardsman Products, Inc.*, 141 F.3d 612, 617 (6th Cir.1998); *Imperial Hotels Corp. v. Dore*, 257 F.3d 615, 620 (6th Cir.2001). "If the highest court has not spoken, the federal court must ascertain from all available data what the state law is and apply it. If the state appellate court announces a principle and relies upon it, that is a datum not to be disregarded by the federal court unless it is convinced by other persuasive data that the highest court of the state would decide otherwise." *Northland Ins. Co.* at 617 (quoting *Clutter v. Johns–Manville Sales Corp.*, 646 F.2d 1151, 1153 (6th Cir.1981)).

Plaintiff's first and second claims for relief (Counts I and II) are based on alleged age discrimination in violation of

Chapter 4112 of the Ohio Revised Code (ORC).[3] Under ORC Chapter 4112, it is unlawful for an employer to discharge without just cause or otherwise discriminate against an employee with respect to any matter related to employment because of age. See ORC § 4112.02(A). Further, an employer cannot discriminate against or discharge without just cause an employee "aged forty or older who is physically able to perform the duties and otherwise meets the established requirements of the job." ORC § 4112.14(A). In interpreting and deciding age discrimination claims brought under §§ 4112.02 and 4112.14, the Ohio Supreme Court generally follows the analytic framework established by federal case law for use under Title VII and the Age Discrimination in Employment Act (ADEA). See *Mauzy v. Kelly Services, Inc.*, 75 Ohio St.3d 578, 582, 664 N.E.2d 1272 (1996); see also *Kohmescher v. Kroger Co.*, 61 Ohio St.3d 501, 575 N.E.2d 439 (1991), syllabus; *Bullock v. Totes, Inc.*, Case No.19395, 2000 WL 1867400 at *3 (Oh.App. Hamilton Co., Dec. 21, 2000).

▮ The ultimate issue under ORC § 4112.02 is whether age was a determining factor in a termination. Absent direct evidence of age discrimination, proof of discriminatory intent is subject to a burden-shifting analysis established by the United States Supreme Court in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973). See *Mauzy* at 587, 664 N.E.2d 1272; *Bullock* at *3. To establish a prima facie case of age discrimination in this manner, the

employee must show that he or she (1) is a member of the protected class under ORC 4112.02 or 4112.14; (2) was subject to an adverse employment decision; (3) is qualified for the position; and (4) was replaced by, or the discharge permitted retention of, a person[4] of comparable qualifications outside the protected class. See *Mauzy* at 582, 664 N.E.2d 1272; see also, *Weiper v. W.A. Hill & Assoc.* 104 Ohio App.3d 250, 262, 661 N.E.2d 796 (1995); *Bullock* at *4. If the employee can establish a prima facie case by a preponderance of the evidence, the burden of production shifts to the employer to articulate a legitimate, nondiscriminatory reason for the adverse employment action. See *Mauzy* at 582, 664 N.E.2d 1272. If the employer articulates such a nondiscriminatory reason, then the presumption of discrimination raised by the prima facie case is rebutted, and the employee's burden is to prove that the employer's articulated reason for the discharge is only a pretext for discrimination. *Ibid.;* see also *Weiper* at 263, 661 N.E.2d 796.

As explained in the Court's earlier Opinion and Order, the following facts of this case are not in dispute. In April 1997, Plaintiff Weller applied to work at Defendant Timet's plant in Toronto, Ohio. In May, he was hired as Manager of Laboratory, Nondestructive Testing and Inspection at that location. This position involved managing the laboratory and supervising employees who tested Timet products to ensure that they met customer and internal requirements, as well as

---

**3.** In footnote 1 to their Notification of Decision by Ohio Supreme Court (Doc. 41), the Defendants assert that Plaintiff here relies only on ORC § 4112.02, while the decision in question addresses a question raised under § 4112.14. This Court is not inclined to read Plaintiff's Counts I and II so narrowly. In any case, however, the Ohio Supreme Court has said that the analysis is the same for state claims of age discrimination under

§§ 4112.02 and 4112.14. See *Byrnes v. LCI Communication Holdings Co.*, 77 Ohio St.3d 125, 128, 672 N.E.2d 145 (1996).

**4.** It appears that the Ohio courts interpret this term as "a person or persons" in appropriate cases. See *Byrnes v. LCI Communication*, 77 Ohio St.3d 125, 131, 672 N.E.2d 145 (1996); *Barker v. Scovill, Inc.*, 6 Ohio St.3d 146, 451 N.E.2d 807 (1983).

requiring Plaintiff to arrange subcontracting or outsourcing of various laboratory tests that could not be completed internally. (Weller Dep. at 61–64)

In June of 1999, Plaintiff was promoted and his title changed to Manager of Laboratory, Nondestructive Testing and Quality Assurance. In this new capacity, Plaintiff's responsibilities expanded to include those of another employee who was moving to a different position. (Weller Dep. at 97). In addition to his former responsibilities, Plaintiff began managing the quality assurance function which included responsibility for the group that certified product to current specifications. (Weller Dep. at 98–99.) Accordingly, Plaintiff's promotion effectively made him responsible for work that previously had been assigned to two managers. Plaintiff delegated about seventy-five percent of the quality assurance duties to the Quality Assurance Supervisor, Nick Kaschak. (Weller Dep. at 130–31)

In January 2000, Plaintiff received an annual performance review during which he received a set of written goals for the measurement of his year 2000 performance. (Weller Dep. at 140–41, Ex. 4) In April 2000, Defendant Michael Kerns, Vice President of Quality and Technology, became Plaintiff's immediate, direct-line supervisor. (Weller Dep. at 207) On June 21, 2000, Kearns gave Plaintiff a second, additional set of performance goals for 2000. (Weller Dep. at 220–21; Kearns Dep. I, pp. 176–78, Ex. 14).

By the time of his performance evaluation in January 2001, Plaintiff had not met all of the performance goals established by Kearns in late June, 2000. (Weller Dep. at 221–40, Ex. 15; Kearns Dep. I at 178) Based on his own observations and reports from other employees, Kearns gave Plaintiff a performance evaluation that included both "fully proficient" and "needs improvement" ratings. Plaintiff disagreed with the evaluation and presented a detailed response to the appraisal, contending that he had been measured for the entire year against goals that had been set in July. Further, Plaintiff contended that he was doing the work of two managerial employees without sufficient resources. (Weller Dep. at 253, Ex. 15) Plaintiff was given new and specific performance goals and was informed that he would be evaluated after the first quarter in 2001. (Weller Dep. at 242–43.)

Soon after he arrived, in the second quarter of 2000, Kearns had decided to fill a position of Quality and Technology Manager at a level between himself and Plaintiff Weller, which position had not previously existed at the Toronto plant. (Kearns Dep. II at 41, 43–47) In the spring of 2001, Mike Volas, age 47, whose general resume' had been forwarded to Toronto by a friend working at another Timet plant, was contacted by Kearns and then interviewed in Toronto at the end of April for the Quality and Technology Manager position. (Volas Dep. at 6–8, 10–12). Volas had a Bachelor's Degree in metallurgical engineering from the University of Michigan and a Masters Degree in business administration from the University of Phoenix. He had worked since 1975 in the gas turbine and titanium metals industries, currently as Manager of Research and Development for Allvac, a titanium producer in North Carolina. (Volas Dep. at. 5–8) Volas accepted the position formally offered in Timet's letter dated April 30, 2001, and started work five weeks later on June 12. (Volas Dep. at 16–17, Ex. 43)

On May 11, 2001, Kearns conducted an evaluation of Weller's progress on 2001 goals. (Kearns I Dep., Ex. 17) Plaintiff had admittedly failed to meet a number of the goals and deadlines established for him following his January 2001 performance evaluation. Kearns concluded that Plain-

tiff's work performance needed "significant improvement." (Pltf's. Res. to MSJ, Doc. 32, Ex. 13) In response, Plaintiff reiterated the same concerns that he had raised during his January 2001 appraisal and also asserted that he had expected to obtain some relief as a result of the hiring of the Quality and Technology Manager, which he had been advised would not happen right away. (Pltf's. Res. to MSJ, Doc. 32, Ex. 10; Weller Dep. at 144.)

Sometime "[i]n the April–May time frame" of 2001, Greg Judy, age 40, also applied in response to an internet ad, and was interviewed by Kearns, for the position of Quality and Technology Manager. (Judy Dep. at 7, 11–12, 14; Weller Dep. at 43–45) Judy had graduated from high school and attended some college; but did not have a degree. (Judy Dep. at 8–9) However, he had more than 20 years technical, testing, and marketing experience with various employers, including as Corporate Quality Engineer/Laboratory Engineer with RMI Titanium Company from 1992 to 1997 (Judy Dep., Ex. 40). He had previously applied at Timet in January of 2000 for the position of Laboratory Manager, but had withdrawn to take a position elsewhere instead. (Judy Dep. at 10–11)

Judy was not offered the Quality and Technology Manager position because of the hiring of Mike Volas (Judy Dep at 14), but apparently sometime between May 11, 2001 and June 1, 2001, Kearns called to offer the position of Laboratory Manager.[5] Judy received a written offer of employment confirming previous communications, by e-mail dated June 1, 2001 (Id., Ex. 41), which he then accepted June 11, 2001. (Id., Ex. 42) This position, which included part of Plaintiff's responsibilities, was never advertised or posted as vacant, and Timet neither took applications for it nor

conducted any interviews. (Judy Dep. at 20; Pltf's. Res. to MSJ, Doc. 32, Ex. 14.) Judy began work on July 9, 2001. (Judy Dep. at 24, Ex. 42)

On June 29, 2001, Plaintiff was advised that his employment had been terminated based on a review of his skills and recent performance. Timet letter to Weller, 6–29–01, Blosser Depo. Ex. 33. Plaintiff was 60 years old when he was terminated. He holds a Bachelor of Science degree with minors in Chemistry and Physics from The Ohio State University and a Bachelor of Engineering degree from Youngstown State University. He came to Timet with "manufacturing, engineering and management expertise and experience in the forging and metals industries [including] with titanium." Pltf's. Res. to MSJ, Doc. 32, Exs. 1, 2.

■ On essentially these facts, Defendant continues to assert that "(1) Plaintiff still cannot establish a prima facie case of age discrimination because he cannot show that he was qualified for his position." Defs' Notice, Doc. 41, p. 3. This Court does not agree. Ruling on summary judgment granted in a factually similar case of alleged age discrimination under Ohio law, our circuit found that the plaintiff *had* established a prima facie case, based on the following reasoning:

.... [T]he plaintiff's burden at "step one" is relatively light under the *McDonnell Douglas/Burdine* paradigm. *See Barker v. Scovill, Inc.,* 6 Ohio St.3d 146, 451 N.E.2d 807 (1983); *Cline v. Catholic Diocese of Toledo,* 206 F.3d 651, 660 (6th Cir.2000). In *Cline* we cautioned that district courts must not use the "qualified" element of the prima facie case to heighten the plaintiff's initial burden. In an effort to ensure that the first two stages of the *McDonnell Doug-*

---

**5.** Judy expresses some doubt and possible confusion concerning the exact dates involved, but the sequence of events described over several pages makes this much virtually certain. Judy Dep. 17–20.

*las* inquiry remain analytically distinct, and that a plaintiff's initial burden not be too onerous, we held that the "qualified" prong of the *prima facie* case must be evaluated in light of the plaintiff's employment record "prior to the onset of the events that the employer cites as its reason" for its decision. 206 F.3d 651, 662–63. We further instructed that the legitimate non-discriminatory reason offered by the employer at the second stage of the *McDonnell Douglas* inquiry may not be considered in determining whether the employee has produced sufficient evidence to establish a prima facie case. *Id.* at 660–1.

*Peters v. Lincoln Electric Co.,* 285 F.3d 456, 473 (6th Cir.2002); see also *Mac-Donald v. E. Wyoming Mental Health Center,* 941 F.2d 1115, 1121 (10th Cir.1991) (plaintiff can establish prima facie qualification by credible evidence that he or she continued to possess objective qualifications held when hired).

■ Applying this law to the facts presented here, this Court concludes that Plaintiff Weller has met the requirements of step one of the *McDonnell Douglas* test by offering evidence that 1) he was a member of a class protected under the Ohio statute, 2) he was subject to an adverse employment action, 3) he was arguably qualified for the position from which he was removed, and 4) Defendant Timet replaced him in that position with two persons whom a jury might find were "substantially younger."

■ As required by *Mauzy* and *McDonnell Douglas* where such a prima facie case is thus presented, Defen-

dants here have articulated a legitimate, nondiscriminatory reason for Plaintiff's discharge—"continued poor work performance" [6] as evidenced by his latest evaluations by Defendant Kearns—about which the Defendants claim there is no genuine dispute "because Plaintiff cannot show [this] explanation for his discharge was pretextual." Defs.' MSJ Memo., Doc. 26, p. 15.

Pretext can be established by (1) a direct evidentiary showing that a discriminatory reason more likely motivated the employer or by (2) an indirect evidentiary showing that the employer's explanation is not credible. *Carney v. Cleveland Heights–University Heights Sch. Dist.,* 143 Ohio App.3d 415, 428, 758 N.E.2d 234, 245 (2001). However, "[m]ere conjecture that [the] employer's explanation is a pretext for intentional discrimination is an insufficient basis for denial of summary judgment." *Carney,* 758 N.E.2d at 245.

*Peters* at 470. In this case, Plaintiff concedes that "there is no direct evidence of age discrimination" Pltf's. Res. to MSJ, Doc. 32, p. 13. Thus, Plaintiff must rely on some type of "indirect evidentiary showing" that Timet's explanation is not credible, i.e., that it is "a pretext for intentional discrimination."

In *Reeves v. Sanderson Plumbing Products, Inc.,* 530 U.S. 133, 120 S.Ct. 2097, 147 L.Ed.2d 105 (2000), the Court further explains proper application of the *McDonnell Douglas* paradigm at the pretext stage in the context of a conflict among the circuits on the question of what evidence is sufficient to create a question for the jury.[7]

---

**6.** In deposition, Defendant Kearns testified: "Mr. Weller was dismissed because he had poor overall performance in terms of day-to-day planning and advance planning. He had poor execution of tasks being asked of him. And his staff development was also lacking." Kearns Depo. I at 23.

**7.** The Fifth Circuit in *Reeves* had "proceeded from the assumption that a prima facie case of discrimination, combined with sufficient evidence . . . to disbelieve the defendant's legitimate, nondiscriminatory reason for its decision, is insufficient as a matter of law to sustain a jury's finding of intentional discrimi-

The Court first refers to its earlier opinion in *St. Mary's Honor Center v. Hicks,* 509 U.S. 502, 113 S.Ct. 2742, 125 L.Ed.2d 407 (1993), noting:

> .... There we held that the factfinder's rejection of the employer's legitimate, nondiscriminatory reason for its action does not *compel* judgment for the plaintiff. 509 U.S. at 511, 113 S.Ct. 2742. The ultimate question is whether the employer intentionally discriminated, and proof that "the employer's proffered reason is unpersuasive, or even obviously contrived, does not necessarily establish that the plaintiff's proffered reason ... is correct." *Id.,* at 524, 113 S.Ct. 2742. In other words, "[i]t is not enough ... to disbelieve the employer; the factfinder must *believe* the plaintiff's explanation of intentional discrimination." *Id.* at 519, 113 S.Ct. 2742,

*Reeves* at 146–47, 120 S.Ct. 2097 (parallel citations omitted) (emphasis by the Court). The Court then points out that proof the employer's explanation "is unworthy of credence is simply one form of circumstantial evidence that is probative of intentional discrimination" and concludes, [t]hus, a plaintiff's prima facie case, combined with sufficient evidence to find that the employer's asserted justification is false, may permit the trier of fact to conclude that the employer unlawfully discriminated, and it may be quite persuasive. *Id.* at 147–48, 120 S.Ct. 2097. In the very next sentence, however, the Court adds: "This is not to say that such a showing by the plaintiff will *always* be adequate to sustain a jury's finding of liability." *Id.* at 148, 120 S.Ct. 2097. Thus, it appears that whether a jury question is created by a prima facie case combined with sufficient evidence to disbelieve employer's explanation neces-

sarily depends on further analysis of the particular case. See *Ibid.*

The Sixth Circuit's *Peters* opinion, cited above, further analyses application of *McDonnell Douglas* under Ohio's age discrimination law in light of the Supreme Court's *Reeves* opinion.

> We recently revisited the question of what is a discrimination plaintiff's evidentiary burden at the pretext stage in light of *Reeves* in *Gray v. Toshiba Am. Consumer Prod.,* 263 F.3d 595 (6th Cir. 2001), and concluded in that case that *Reeves* bolstered the rebuttal framework we established in *Manzer v. Diamond Shamrock Chem. Co.,* 29 F.3d 1078, 1081 (6th Cir.1994). In *Gray* we stated:

> > This circuit ... has held that "[t]he jury may not reject an employer's explanation [of its action] unless there is sufficient basis in the evidence for doing so." *Manzer,* 29 F.3d at 1083 (emphasis in original).

> > To make a submissible case on the credibility of his employer's explanation, the plaintiff is required to show by a preponderance of the evidence either (1) that the proffered reasons had no basis in fact, (2) that the proffered reasons did not actually motivate his discharge, or (3) that they were insufficient to motivate discharge.

> *Id.* at 1084 (internal quotations and emphasis omitted). The first type of rebuttal, we said, consists of evidence that the reasons given by the employer simply did not happen. *Id.* The third type, "ordinarily consists of evidence that other employees, particularly employees not in the protected class, were not fired even though they engaged in substantially identical conduct to that which the

---

nation," *Id.* at 146, 120 S.Ct. 2097, while other circuits (including the Sixth, *Kline v. TVA,* 128 F.3d 337 (6th Cir.1997)) had taken the position that "a prima facie case com-

bined with sufficient evidence to disbelieve employer's explanation always creates [a] jury issue of whether employer intentionally discriminated." *Id.* at 140.

employer contends motivated its discharge of the plaintiff." *Id.* The first and third types of rebuttals, we held, "are direct attacks on the credibility of the employer's proffered motivation for firing the plaintiff, and if shown, provide an evidentiary basis for what the Supreme Court has termed a 'suspicion of mendacity.'" *Id.*

*Peters* at 471–72 (quoting *Gray,* in turn quoting from *Manzer*).

In this case, as noted above, the Defendants have articulated a non-discriminatory reason for terminating Plaintiff, specifically, "a review of your skills and recent performance [which] indicates that a position with TIMET will no longer be available for you." Timet letter to Weller, 6–29–01, Blosser Depo. Ex. 33. An "on-going effort directed at improving the organization's ability to respond to customer needs and implement rapid and sustained continuous improvement" is also referred to. *Ibid.* The record indicates, and Plaintiff does not dispute, that he did receive the less than "fully proficient" employee performance evaluation from Defendant Kearns for the year 2000 (Kearns Depo. I, Ex. 14) and the less-than-fully-successful interim goals achievement evaluation from Kearns in May 2001 (Kearns Depo. I, Ex. 17). Thus, Plaintiff cannot present the first type of rebuttal evidence identified in *Peters,* viz., "that the reasons given by the employer simply did not happen." Fair and justified or not, it is undisputed that Plaintiff did receive those evaluations upon which Defendants rely as reasons for Plaintiff's discharge.

Neither does Plaintiff's case contain evidence to support the third type of rebuttal showing identified in *Peters,* i.e., that the less-than-fully-successful evaluations were "insufficient to motivate [Plaintiff's] discharge," as might be shown by Defendants' different treatment of other but substantially younger employees in comparable circumstances or, perhaps, by established company criteria for terminating employees that exclude the identified evaluation circumstances of Plaintiff's case.[8] As a result, as it was in the *Peters* case, Plaintiff here is left with only the second *Manzer* rebuttal option—a showing "that the employer's articulated reason did not actually motivate the discharge." *Peters,* 285 F.3d at 472 (quoting *Gray,* 263 F.3d at 602).

■ As to this particular type of rebuttal, however, *Peters* further quotes *Gray,* again quoting *Manzer's* holding that,

> [i]f the bare bones elements of plaintiff's prima facie case were sufficient to make this showing, ... the entire 'burden shifting' analysis of McDonnell Douglas and its successors would be illusory ... Accordingly, we hold that, in order to make this type of rebuttal showing, the plaintiff may not rely simply upon his prima facie evidence, but must, instead, introduce additional evidence of [prohibited][9] discrimination.

*Ibid.*; see also *Hedrick v. Western Reserve Care System,* 355 F.3d 444, 460 (6th Cir. 2004). The Court has found no controlling Ohio case to indicate that this is not an accurate view with respect to Ohio anti-discrimination law following *Reeves,* and Ohio appellate cases appear to agree. See, e.g., *Hapner v. Tuesday Morning Inc.,* Case No. 19395, 2003 WL 366761 (Ohio App. Montgomery Co., Feb. 21, 2003):

> ... [W]e conclude that *Manzer* has been modified by Reeve's holding that only in "appropriate circumstances" may the trier of fact reasonably infer that a false

---

8. Also as in *Peters,* Plaintiff here does not rely on numerical or statistical evidence to show a pattern or practice of terminating of older employees in favor of retaining younger ones.

9. The word "prohibited" in brackets was inserted by the *Peters* court. In the *Gray* opinion the word in brackets is "gender," the discrimination alleged in that case.

explanation is a pretext, i.e., a cover-up for discrimination. Simply put, proof of pretext does not always constitute proof of intentional discrimination required for avoidance of a summary judgment or a directed verdict.

*Id.* at *4.

■ In this case, Plaintiff relies on various evidence to argue in effect that Defendants' decision to discharge him was so unfair and unreasonable and so suspicious in the way it was carried out that a jury could conclude it was a pretext for allowing substitution of new and younger employees, i.e., for age discrimination. Pltf's. Res. to MSJ, Doc. 32, pp. 12–25. The Court does not agree. To begin with, Plaintiff's evidence is not particularly persuasive as to pretext, alone. Generally, the soundness of an employer's decision to discharge based on evaluation of job performance may not be questioned as a means of showing pretext. See, e.g., *Brocklehurst v. PPG Industries Inc.,* 123 F.3d 890, 898 (6th Cir.1997).

.... An age discrimination action is not "a device which permits the jury to examine an employer's reasons for discharge and determine that the employer's business judgment or policies do not appeal to its sensibilities." *Elliott v. Group Med. & Surgical Service,* 714 F.2d 556, 567 (5th Cir.1983).

*Ibid.* Nor can Plaintiff show pretext by his previous good evaluations or the good opinions of co-workers or previous supervisors. As observed about such evidence in *Peters:*

It is simply stating the obvious to observe that what may have satisfied one management regime does not necessarily satisfy its successor, and Plaintiff's proffered evidence does not serve to rebut ... **current** management's views regarding ... [plaintiff's] insufficient skills to continue performing in ... [his former] position.

285 F.3d at 474 (emphasis by the court). Plaintiff's own disputation of the accuracy and fairness of his performance evaluations suffers from the same shortcoming, and the Court finds nothing improper in Defendant Kearn's testimony that he relied in part on reports from other employees in making those evaluations.[10]

Assuming for the purposes of this analysis, however, that Plaintiff's proffered evidence might make a case for the jury in other circumstances, the Court finds it does not do so here. Because there is no additional evidence of prohibited age discrimination offered, beyond the "bare bones" prima facie showing of replacement by persons who are arguably substantially younger, under the above holding of *Peters* there is not sufficient evidence of prohibited discrimination to avoid summary judgment in the evidential circumstances of this case.[11]

---

**10.** Plaintiff's hearsay objection as to such testimony has no merit. The Federal Rules of Evidence define hearsay as an out of court statement "offered in evidence to prove the truth of the matter asserted." Fed.R.Evid. 801(c). The hearsay rule does not apply to statements offered merely to show that they were made or had some effect on the hearer, their obvious purpose here. See *United States v. Gibson,* 675 F.2d 825, 833–834 (6th Cir. 1982).

**11.** The Court is aware of the emphasis placed by our circuit on the potential value of evi-

dence relevant to the reasonableness of the employer's decision in "shedding light on whether the employer's proffered reason for the employment action was its actual motivation," *Wexler v. White's Furniture, Inc.,* 317 F.3d 564, 576 (6th Cir.2003)(en banc). However, *Wexler* involved federal law, the ADEA, not Ohio law. More importantly, *Wexler* contained some direct evidence of discriminatory intent, and its holding is that evidence as to the reasonableness of the discharge decision "[w]hen combined with the age related statements" of decision-makers (i.e., direct evidence) created a genuine issue of material

In *Hapner,* quoted above, the Ohio appellate court was considering alleged gender discrimination in a discharge that the employer asserted was based on misconduct and in which a prima facie case had been conceded. Nevertheless, the court's observations at least suggest it also would agree with applicability of the *Peters'* holding in the circumstances of this case as well. *Hapner* states:

> .... In cases where the conduct upon which a discharge is predicated is subject to factual dispute, merely persuading the finder of fact that the facts are as claimed by the employee, without more, is not sufficient to establish a claim of unlawful discrimination, assuming that the discharged employee is within a legally protected class. Otherwise, every time a member of a protected class were discharged, that discharged employee could obtain judicial review of the grounds for his discharge. That is not the intent of laws prohibiting discrimination in employment. An employer may make a reasonable factual conclusion concerning an employee's conduct, and the mere fact that a jury might reach a different factual conclusion, without more, is not sufficient to make out a claim of unlawful employment discrimination. It is only when the employer's conclusion of fact is so unreasonable that it independently supports an inference of discrimination, or when an employer's conclusion of fact with which a jury subsequently disagrees, together with other evidence, supports a finding of discrimination, that a jury may reasonably find that the employer's proffered legitimate grounds for the adverse action is a pretext for unlawful discrimination. That is consis-

tent with our understanding of *Reeves,* supra.

2003 WL 366761 at *11. If, as it does here, the Ohio court applies this analysis to the first type of *Manzer* rebuttal, i.e., a direct attack on the claimed factual basis of the discharge, there can be little doubt it would apply the same analysis to Plaintiff's attempt in this case to show that the Defendants' articulated reason did not actually motivate the discharge (the second type of *Manzer* rebuttal).

■ Whether completely fair and justified or not, Defendants' articulated reasons for Plaintiff's discharge as supported by their proffered evidence clearly cannot be said to be so unreasonable as to independently support an inference of prohibited age discrimination, and there is no other such evidence here, but the ages of Plaintiff's replacements.

> "The isolated fact that a younger person eventually replaces an older employee is not enough to permit a rebuttal inference that the replacement was motivated by age discrimination." *Chappell v. GTE Prods. Corp.,* 803 F.2d 261, 267 (6th Cir.1986) (citing *LaMontagne v. American Convenience Prods., Inc.,* 750 F.2d 1405, 1413 (7th Cir.1984)).

*Hedrick,* 355 F.3d at 461. Therefore, under the circumstances claimed by Defendants in this case—hirings as part of a reorganization involving realignment of job responsibilities undertaken in light of Plaintiff's perceived less-than-satisfactory job performance—the isolated fact of replacement by younger persons is not enough to support an inference of prohibited age discrimination or avoid summary judgement. In Count III of his Complaint, Plaintiff Weller also asserts that his termination "violated the public policy of

fact so as to prevent proper granting of judgment as a matter of law in that case. *Id.* at 577–78. Neither *Peters* nor *Gray* is men-

tioned in *Wexler,* much less their holdings overruled or limited.

the State of Ohio as set forth in R.C. Chapter 4112." Doc. 1, Attch., p. 4. Ohio law recognizes the tort of wrongful discharge in violation of public policy. *Greeley v. Miami Valley Maintenance Contractors, Inc.,* 49 Ohio St.3d 228, 551 N.E.2d 981, syllabus ¶ 2 (1990). This tort represents an exception to the at will employment doctrine. See *Mers v. Dispatch Printing Co.,* 19 Ohio St.3d 100, 483 N.E.2d 150, syllabus ¶ 1 (1985)(noting employment relationship cannot be terminated for reason which is contrary to law).

■■■■ A claim of wrongful discharge in violation of public policy, commonly referred to in Ohio cases as a Greeley claim, requires a prima facie showing of each of the following elements: (1) a clear public policy manifested in the Ohio or United States Constitutions, a statute or administrative regulation, or the common law (the "clarity element"); (2) that the dismissal of employees under similar circumstances would jeopardize the public policy (the "jeopardy element"); (3) that the discharge was motivated by conduct related to the public policy (the "causation element"), and (4) that the employer lacked a legitimate overriding business justification for the plaintiff's discharge (the "overriding justification element"). *Collins v. Rizkana,* 73 Ohio St.3d 65, 70, 652 N.E.2d 653 (1995). The Court determines the first two elements of clarity and jeopardy as matters of law, whereas the causation and overriding justification elements are questions of fact. *Ibid.*

■■■■ A claim for wrongful discharge in violation of public policy embodied in statute prohibiting discriminatory practices will fail if the underlying discrimination claim fails. *Howard v. Contech Construction Prods., Inc.,* Case No. CA2003-01-018, 2003 WL 22887954 *7 (Ohio App. Butler Co., Dec. 8, 2003) (citing *Godfredson v. Hess & Clark, Inc.,* 173 F.3d 365, 375 (6th Cir.1999); *Robinson v. Nationwide Ins.

*Companies,* Case No.2000–L–119, 2001 WL 1647144 (Ohio App. Lake Co., Dec. 21, 2001)). Because Weller's claims that he was terminated in violation of Ohio's age discrimination statute fail, his corresponding claim that he was terminated in violation of Ohio's public policy against age discrimination likewise fails as a matter of law. This Court has also held that such a claim may not be pursued against individuals. *Arthur v. Armco, Inc.,* 122 F.Supp.2d 876, 880 (S.D.Ohio 2000).

Consistent with the foregoing, Defendants' Motion for Summary Judgment (Doc. 26) is GRANTED. The Clerk is directed to enter JUDGMENT in favor of each of the Defendants and dismissing this case.

IT IS SO ORDERED.